*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. A. GASKIN, Minor.

UNPUBLISHED
May 18, 2023

No. 363047
Wayne Circuit Court
Family Division
LC No. 2001-400705-NA

Before: RICK, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to the minor-child MAG under MCL 712A.19b(3)(a)(*ii*) (desertion of child for 91 or more days and custody not sought), (b)(*ii*) (failure to prevent sexual abuse and reasonable likelihood of future abuse if child returned to parent's home), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent's home), and (k)(*i*) (abandonment of a young child and reasonable likelihood of future harm if returned to parent).[1] We affirm.

## I. BACKGROUND

The original petition in this case asked the trial court to take jurisdiction over MAG and to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (g), and (j). The basis for this request was an allegation that MAG had been sexually assaulted by respondent's cousin, PL. According to the petition, respondent and MAG were living with PL and several other adults at the time. The petition alleged that PL had a violent criminal history that included numerous instances of domestic violence, and that he had previously pled no contest to accosting a minor for immoral purposes. According to the petition, respondent should have known about PL's criminal history involving minors, but nevertheless chose to live in PL's home. The petition also alleged that, when MAG told respondent about PL's sexual abuse, respondent refused to report the abuse

---

[1] The parental rights of MAG's father were terminated in the same order, but he has not filed a claim of appeal and is therefore not a party to this appeal. Some of the grounds for termination listed in the trial court's order seem to apply only to father, but the trial court did not differentiate between which grounds applied to father and which applied to respondent.

to law enforcement, or to take MAG to a doctor for a medical examination, because she did not believe MAG.

At the ensuing termination trial, Children's Protective Services (CPS) worker Mariah Taylor testified that MAG had been placed in a safety plan with her brother since the case began, while respondent was living in a shelter. Despite MAG's relative placement, Taylor opined that it was in MAG's best interests to terminate respondent's parental rights because respondent lacked appropriate housing, failed to seek help for MAG after learning about the sexual abuse allegations, and there was a reasonable likelihood that MAG would be harmed if returned to respondent's care. Taylor testified that her main concern was that respondent knew about the sexual abuse allegation and did not call the police or report the abuse.

MAG, who was 15 years old at the time of trial, testified that she previously lived with respondent and four or five other adults, including PL. MAG said that, during this time, respondent would often leave for long periods without telling MAG where she was, and if MAG asked, respondent would tell MAG to "stay out of grown up's business." According to MAG, respondent's absenteeism would sometimes last multiple weeks, and she never left any money or supplies for MAG. MAG said that she had to sleep on the floor during this time, and that the other adults in the house would party with alcohol and marijuana every weekend while she tried to sleep. She also said that some of the adults living in the house would have sex in front of her, and that they once tried to get her to join, but she left the house instead. According to MAG, she never felt safe in that house, but when she told respondent this, respondent said that MAG did not know what she was talking about and that MAG was safe.

During the course of her testimony, MAG recounted the night of the sexual assault. She testified that, early that night, the mother of PL's child came over to the house and encouraged everyone to get drunk, and everyone (including MAG) did. Respondent was not home at the time. According to MAG, after almost everyone was asleep, PL and another adult living in the house—SR—propositioned MAG for sex. When MAG refused, the two adults pulled MAG's pants off, touched her vagina, and "just kept going." MAG testified that she tried to talk to respondent about the assault, but respondent did not listen. MAG said that she did not want to live with respondent in the future because she was scared something would happen again.

Respondent testified that she did not ask MAG many questions about the assault because she chose to instead ask the other adults in the house what happened. Respondent also explained that she did not contact the police after she found out about the assault because there was a bad storm and she could not make it to the police station. Respondent denied that MAG ever said that she felt unsafe at the house, and said that MAG wanted to stay in the house when respondent would leave. Respondent testified that she was living in a shelter at the time of trial, and her income consisted of Social Security payments and food stamps. She also said that she was unable to work due to injuries she sustained in a car accident in 2003.

In its order terminating respondent's parental rights, the trial court found that MAG and respondent had been living in a house with numerous other adults who frequently used marijuana and alcohol. The trial court credited MAG's testimony that she had told respondent that she felt uncomfortable where they were living, but respondent ignored her and, in fact, would frequently leave MAG alone in the house for weeks at a time with no money, food, or any way to contact

respondent. The trial court found that this left MAG vulnerable, and that PL and SR took advantage of the situation and coerced MAG to have sex with them. The trial court also found that, when respondent learned about the sexual abuse, respondent "did not want to hear about it," refused to move out of the home, never contacted law enforcement to report the abuse, and declined to take MAG "for a physical exam for sexual abuse." The trial court also noted that MAG was currently placed with her older brother, and that MAG said she "did not ever want to live with [respondent] again." On the basis of these findings, the trial court held that termination of respondent's parental rights was proper under MCL 712A.19b(3)(a)(*ii*), (b)(*ii*), (g), (j), and (k)(*i*). Turning to best interests, the court reasoned that termination was in MAG's best interests because respondent had no plan to care for MAG, MAG needed safety and stability, and respondent "had abandoned her responsibility as a mother to make certain her child was safe and had a stable living environment." The court also found that respondent would not be able to provide "long-term safe care" for MAG in the foreseeable future. Accordingly, the trial court terminated respondent's parental rights. This appeal followed.

## II. STATUTORY GROUNDS

On appeal, respondent first argues that the trial court clearly erred by finding a statutory ground to terminate her parental rights. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011). "We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citation omitted).

The trial court terminated respondent's parental rights on numerous grounds, including MCL 712A.19b(3)(b)(*ii*). That subsection provides that a court may terminate parental rights if it finds clear and convincing evidence that the child suffered sexual abuse and "[t]he parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home." MCL 712A.19b(3)(b)(*ii*). The harm contemplated by MCL 712A.19b(3)(b)(*ii*) must be caused by a parent's act "and not merely contributed to by an unintentional omission." *In re LaFrance*, 306 Mich App 713, 725; 858 NW2d 143 (2014).

The trial court did not clearly err when it found that termination was proper on this ground. Respondent placed MAG in an environment where she knew grown men drank alcohol, partied, and consumed marijuana. One of the couples living in the house also frequently had sex in front of MAG. Not only was this environment inappropriate for a child, but respondent frequently left MAG there alone, often overnight, and sometimes for multiple weeks at a time. During respondent's absences, she refused to tell MAG where she was, often did not leave MAG with a way to contact her, and never left MAG any supplies or money for food or other necessaries. Even more troubling, when MAG told respondent that she did not feel safe in that environment,

respondent assured MAG that she was safe. Respondent's refusal to listen to MAG's fears, and her choice to continue leaving MAG alone and vulnerable at this house, resulted in PL and SR sexually abusing MAG—on one of the many nights respondent left MAG at the house alone, the other adults in the house gave MAG alcohol despite her being underage, and, once everyone was asleep, PL and SR coerced MAG to have sex with them. This was wholly avoidable if respondent had merely used better judgment to see that this living environment placed MAG at risk, or listened to MAG when she told respondent that she did not feel safe living in that house. Instead of protecting MAG, respondent chose to leave MAG vulnerable and alone.

On appeal, respondent asserts that she "did not cause the assault . . . or have an ability to prevent it before it happened," but that is only half true. While respondent may not have caused the assault—only PL and SR bear responsibility for that—respondent could have prevented it by listening to MAG when she voiced her fears about living in the house, or using her judgment to see that the house was not safe for a child. Respondent stresses how difficult it was to find alternative housing for her and MAG given respondent's limited income, but finding alternative housing was not the only way respondent could have kept MAG safe. As respondent emphasizes on appeal, "[n]othing occurred in [respondent's] presence." It follows that respondent could have ensured MAG's safety by staying with MAG overnight, rather than leaving MAG alone and vulnerable in a house in which she already felt unsafe. Respondent's decision to constantly leave MAG alone at the house, often overnight and sometimes for weeks at a time, demonstrated respondent's unwillingness (or inability) to place MAG's need for safety over respondent's own wants and desires.[2] This in turn supported termination of respondent's parental rights under MCL 712A.19b(3)(b)(*ii*). See *In re Gonzales/Martinez*, 310 Mich App 426, 432; 871 NW2d 868 (2015). (explaining that "MCL 712A.19b(3)(b)(*ii*) addresses the harm occasioned by a parent who is unwilling or unable to protect his or her children from abuse"). For the same reasons, we are unpersuaded by respondent's argument that she only contributed to the harm suffered by MAG through unintentional omissions—respondent had the opportunity to prevent the sexual abuse by, at the very least, staying with MAG while MAG was at the house, but respondent instead left MAG alone in an unsafe environment.

Turning to the other required finding for termination under MCL 712A.19b(3)(b)(*ii*)—the likelihood of future abuse—we conclude that the trial court did not clearly err when it found by clear and convincing evidence that there was a reasonable likelihood MAG would be harmed if returned to respondent's care. Evidence established that respondent has an extensive history with CPS dating back to 2000, and many of the substantiated allegations concerned neglecting and failing to protect her children. That patterned continued in this case—respondent failed to provide a safe living environment for MAG, which resulted in MAG being sexually abused. Most troubling, after being told about the assault, respondent still failed to protect MAG—she did not call the police to report the abuse, nor did she take MAG to get medical care, despite being asked to do so by CPS worker Taylor. Based on this evidence, it is reasonable to conclude that respondent is either unable or unwilling to protect MAG, such that MAG would continue to be

---

[2] Respondent claims on appeal that she only left MAG alone while she was trying "to get back on her feet financially," but this claim is unsupported by any testimony or other evidence presented at trial.

exposed to dangerous situations if returned to respondent's care. Accordingly, the trial court did not clearly err when it found that there was a reasonable likelihood MAG would be harmed if returned to respondent's care, and termination of respondent's parental rights under MCL 712A.19b(3)(b)(*ii*) was appropriate.

"Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## III. BEST INTERESTS

Respondent also argues on appeal that the trial court erred when it found that termination of respondent's parental rights was in MAG's best interests. We disagree.

"[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. We review a "trial court's determination regarding the children's best interests" for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Clear error exists when the reviewing court has a firm and definite conviction that a mistake was made. *In re Benavides*, 334 Mich App at 167.

The primary focus at the best-interest stage is the child. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000). When determining whether termination is in a child's best interest, the trial court should consider all of the evidence, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the possibility of adoption. *White*, 303 Mich App at 713-714. The trial court may also consider the child's well-being while in the respondent's care, *id.* at 714, and, relatedly, whether the child's safety and well-being could be reasonably assured if returned to the respondent's care, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011).

Respondent asserts that it was contrary to MAG's best interests to terminate respondent's parental rights because doing so removed a loving parent from MAG's life, which MAG was unlikely to replace by adoption in light of her age. Respondent also points out that MAG was in a relative placement at the time of termination, and that this, too, weighed against termination.[3] While MAG's placement with a relative and respondent's bond with MAG both weighed against termination, these were only two factors among many for the trial court to consider. The trial court also considered MAG's well-being while in respondent's care, particularly the fact that MAG was sexually abused, and the court reasonably found that MAG's safety and well-being could not be assured if returned to respondent's care. MAG seemingly shared the trial court's concerns because she testified that she did not want to live with respondent in the future because she was scared something would happen. The trial court further reasoned that termination was in MAG's best interests because respondent had no plan to provide for MAG, and MAG needed stability, which respondent had not shown she could provide. The trial court properly considered all these factors,

---

[3] The trial court was required to explicitly address MAG's placement with relatives, see *In re Olive/Metts Minors*, 297 Mich App 35, 44; 823 NW2d 144 (2012), and there is no dispute that the trial court did so.

and its finding that termination of respondent's parental rights was in MAG's best interests was not clearly erroneous.

Affirmed.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien